**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

C.J. MERCADANTE, *et al.*,
      Plaintiffs

    v.

XE SERVICES, LLC, *et al.*,
      Defendant

Civil Action No. 11-1044 (CKK)

**MEMORANDUM OPINION**
(January 15, 2015)

Plaintiffs C.J. Mercadante, Robert Biddle, Johnny Jefferson, and Phillip W. OHara

(collectively "Plaintiffs") brought this action on their own behalf and on behalf of a putative

class against Defendants XE Services, LLC; U.S. Training Center, Inc.; USTC Security

Consulting, LLC f/k/a Blackwater Security Consulting, LLC; and Blackwater Worldwide Trust,

Health and Welfare Plan and Trustees (collectively, "Defendants" or "Blackwater"). Plaintiffs

assert a series of claims—including breach of contract, fraud, and breach of fiduciary duty under

the Employment Retirement Income Security Act of 1974—and allege, among other things, that

they were misclassified as independent contractors and denied various employment benefits. *See*

First Am. Compl. for Damages & Declaratory & Injunctive Relief & Class Relief ("First Am.

Compl."), ECF No. 11. Presently before the Court is Defendants' [24] Second Renewed Motion

to Compel Arbitration. Upon consideration of the pleadings,[1] the relevant legal authorities, and

---

[1] The Court's consideration has focused on the following documents:

- Defs.' Statement of Points and Authorities in Support of Their Second Renewed Motion to Compel Arbitration, ECF No. 24 ("Defs.' Second Renewed Mot. to Compel");
- Pls.' Response and Opposition to Defendants' Second Renewed Motion to Compel Arbitration and Dismiss, ECF Nos. 25 ("Pls.' Opp'n to Second Renewed Mot.");
- Defs.' Reply Memorandum in Support of their Second Renewed Motion to Compel Arbitration, ECF No. 28 ("Defs.' Reply re: Second Renewed Mot.");

the record as a whole, the Court GRANTS Defendants' motion. The Court concludes that the

parties have delegated the authority to determine questions of arbitrability to an arbitrator and

that the delegation agreement survives Plaintiffs' challenges to its validity. Having resolved this

gateway question, the remainder of Plaintiffs' arguments are for an arbitrator—not the Court—to

consider. Accordingly, this action is STAYED during the pendency of the arbitration.

## I. BACKGROUND

The question before the Court is whether the parties have delegated to an arbitrator—

through a valid delegation agreement—the question of whether the underlying claims brought by

Plaintiffs are arbitrable. Because the Court resolves that gateway question in the affirmative,

concluding that the parties have validly delegated questions of arbitrability to an arbitrator, the

Court recites only the background that informs the Court's answer to that gateway question.

### A.  Factual Background

Between 2006 and 2009, each plaintiff served as a security contractor in Iraq or

Afghanistan under contracts that Blackwater held with the U.S. Department of State. *See*

---

- Defs.' Supplemental Brief in Support of Defs.' Motion to Compel Arbitration, ECF No. 38 ("Defs.' Supp. Br.");
- Pls.' Response and Opposition to Defendants' Second Renewed Motion to Compel Arbitration and Dismiss, ECF No. 42 ("Pls.' Supp. Response");
- Pls.' Mem. in Support of Pls.' Supp. Opp'n, ECF No. 42-1 ("Pls.' Supp. Mem.");
- Defs.' Supplemental Reply Brief in Support of Defs.' Motion to Compel Arbitration, ECF No. 48 ("Defs.' Supp. Reply");
- Pls.' Supp. Response Based on Minute Order, ECF No. 60 ("Pls.' *Torrence* Supp.");
- Defs.' Supp. Br. in Support of Motion to Compel Arbitration, ECF No. 61 ("Defs.' *Torrence* Supp."); and
- Pls.' Mem. in Reply to Defs.' *Torrence* Supp., ECF No. 62 ("Pls.' *Torrence* Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

Mercadante Decl. ¶ 2; Biddle Decl. ¶ 2; OHara Decl. ¶ 2; Jefferson Decl. ¶ 2; Defs.' Supp.

Statement ¶¶ 62, 108, 144, 194. Each plaintiff signed an Independent Contractor Service

Agreement (ICSA) with Blackwater. *See* Defs.' Statement of Undisputed Material Facts in

Support of Defs.' Supp. Br., ECF No. 38-1 ("Defs.' Supp. Statement"), ¶ 31 (Plaintiff

Mercadante); *id.* ¶ 77 (Plaintiff Biddle); *id.* ¶ 119 (Plaintiff OHara); *id.* ¶ 154 (Plaintiff

Jefferson). Plaintiffs' claims pertain to their work for Blackwater in this period and primarily

revolve around their argument that they were inappropriately categorized as independent

contractors rather than as employees. *See* First Am. Compl, ¶¶ 12, 21.

Each ICSA includes an identical arbitration clause. *See* Pls.' Response to Defs.' Statement

of Undisputed Material Facts ("Pls.' Response Facts"), ¶¶ 41 (Mercadante), 76 (Biddle), 125

(OHara), 157 (Jefferson's first ICSA); 163 (Jefferson's second ICSA). The clause reads in full:

> [2] **Law/Exclusive Venue/Arbitration**. This Agreement shall be governed by and
> construed in accordance with the laws of the State of North Carolina, applicable
> to contracts made and to be fully performed therein, excluding its conflict of laws
> principles; provided, however, to the extent that BSC [Blackwater Security
> Consulting, LLC] provides DBA Insurance[3] to Contractor and Contractor's
> Group, Contractor and Contractor's Group hereby agree that the remedies and
> benefits provided by the United States Department of Labor shall be the sole and
> exclusive remedies in place of all other liability of BSC; provided further, that to
> the extent an action is brought on behalf of Contractor or Contractor's Group,
> regardless of what is plead in any complaint, Contractor waives the right to any
> venue other than the United States Department of Labor or a federal court with

---

[2] The arbitration clauses are numbered differently in the various agreements. In Mercadante's
agreement, the clause is numbered 20.1; in Biddle's agreement, it is numbered 20.5; in OHara's
agreement it is numbered 19.5; in Jefferson's first agreement, it is numbered 20.1; and in
Jefferson's second agreement, it is numbered 19.5. *See* Pls.' Response Facts ¶¶ 41, 76, 125, 157,
163.

[3] "DBA Insurance" refers to insurance pursuant to the worker's compensation scheme of the
Defense Base Act, codified at 42 U.S.C. §§ 1651-1655. *See Brink v. XE Holding, LLC*, 910 F.
Supp. 2d 242, 245 (D.D.C. 2012) ("The Defense Base Act ("DBA"), 42 U.S.C. § 1651 *et seq.*,
establishes a uniform, federal compensation scheme for civilian contractors and their employees
for injuries sustained while providing functions under contracts with the United States outside its
borders."); *cf.* Defs.' Supp. Statement, Ex. A at *21, XE000676.

jurisdiction to review such matters. *Contractor and BSC hereby agree that any dispute regarding interpretation or enforcement of any of the parties' rights or obligations under this Agreement shall be resolved by binding arbitration according to the rules of the American Arbitration Association. Proceeding to arbitration and obtaining an award thereunder shall be a condition precedent to the bringing or maintaining of any action in any court with respect to any dispute arising under this Agreement,* except for the institution of a civil action of a summary nature where the relief sought is predicated on there being no dispute with respect to any fact or relief of an injunctive nature. Contractor hereby waives any rights to seek removal of any dispute to the state or federal courts.

*Id*. (emphasis added). The rules of the American Arbitration Association ("AAA") provide for an arbitrator to decide questions of arbitrability. *See* AAA Employment Arbitration Rules and Mediation Procedures, Rule 6. Three of the plaintiffs—Mercadante, OHara, and Jefferson—acknowledge that the initials on the pages that include the arbitration clause are theirs; Plaintiff Biddle stated that he did not know whether the initials on those pages were his. Defs.' Supp. Statement ¶ 32 (Mercadante); *id*. ¶ 120 (OHara); *id*. ¶¶ 155, 165 (Jefferson); *id*. ¶ 78 (Biddle). The parties dispute the circumstances that surround the signing of ICSAs, including the dates on which the ICSAs were signed. *See, e.g.*, Pls.' Response Facts ¶ 10.

Each plaintiff also signed one or more additional "schedules" providing further details about each plaintiff's assignment, which were dated after the ICSAs. Each schedule includes the following language:

This Schedule [] is incorporated into and made part of that certain agreement entitled "Independent Contractor Service Agreement" between Blackwater and Contractor. All other terms and conditions of the Independent Contractor Service Agreement shall remain unchanged.

Defs.' Supp. Statement ¶ 47-48 (Mercadante's Schedule 3.1 – Compensation Policy). *See id*. ¶¶ 52, 55 (Mercadante's Schedule A – Engagement Specific Information); *id*. ¶¶ 94-95 (Biddle's Schedule 3.1; *id*. ¶¶ 98-99 (Biddle's second Schedule 3.1); *id*. ¶ 104 (Biddle's Schedule A); *id*. ¶ 134 (OHara's first Schedule A); *id*. ¶ 143 (OHara's second Schedule A); *id*. ¶¶ 174, 178 (Jefferson's Schedule 3.1); *id*. ¶¶ 183-84 (Jefferson's first Schedule A); *id*. ¶¶ 188-89 (Jefferson's

second Schedule A). While some of the plaintiffs acknowledge having read this statement

regarding incorporation in the ICSA when signing the schedules, others deny having read it. *See*

Defs.' Supp. Statement ¶¶ 47, 50, 55, 94, 135, 141, 179, 184, 189.

## B.  Procedural History

Plaintiffs filed a Complaint for Damages and Injunctive and Class Relief. Defs.'

Statement of Undisputed Material Facts in Support of Defs.' Supp. Br., ECF No. 38-1 ("Defs.'

Supp. Statement"), ¶¶ 1-2. Defendants moved to compel arbitration. *Id*. ¶ 3. On May 22, 2012,

the Court denied that motion without prejudice. *See* Memorandum Opinion and Order, ECF No.

20 ("2012 Mem. Op. & Order"), at 1. The Court reasoned that, because Defendants had argued

for the first time in their reply brief that the parties had delegated the question of arbitrability to

an arbitrator, "Defendants deprived Plaintiffs of an opportunity to render a meaningful response."

*Id*. at 5. The Court denied the motion to compel arbitration without prejudice in order to be able

to consider a renewed motion to compel with the benefit of additional briefing "on the question

of whether Defendants may invoke the delegation agreement in this case in order to compel the

arbitration on gateway questions of arbitrability." *Id*. The Court also ordered the parties not to

incorporate arguments from prior submissions. *Id.* at 5-6.

After considering the parties' additional briefing with respect to Defendants' [24] Second

Renewed Motion to Compel Arbitration,[4] the Court concluded that "additional fact development

on the narrow question of contract formation is appropriate." Order, dated April 22, 2013, ECF

No. 29 ("2013 Order"), at 7. Accordingly, the Court ordered limited discovery on that narrow

question and set a schedule for subsequent additional briefing. *Id*. at 8. The Court once again

---

[4] The Court previously struck Defendants' first [22] Renewed Motion to Compel Arbitration
because it failed to comport with a previous order of the Court. *See* Order, ECF No. 23, at 1.

ordered the parties not to incorporate by reference arguments from previous submissions. *See id.* at 9. The Court is now considering that briefing. On November 17, 2014, the Court asked the parties for additional briefing limited to the impact of *Torrence v. Nationwide Budget Finance*, 753 S.E.2d 802 (N.C. App. 2014), on the unconscionability analysis that the Court must conduct. The Court will consider the briefing in response to that request, as well.

## II. LEGAL STANDARD

### A. Motion to Compel

A motion to compel arbitration is treated as "a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008); *see also Haire v. Smith, Curie & Hancock LLP*, 925 F.Supp.2d 126, 129 (D.D.C. 2013). "Under Rule 56(c), summary judgment is appropriate only if 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' " *Aliron Int'l*, 531 F.2d at 865 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). "The party seeking to compel arbitration must 'present evidence sufficient to demonstrate an enforceable agreement to arbitrate.' " *Haire*, 925 F.Supp.2d at 129 (quoting *Hill v. Wackenhut Servs. Int'l*, 865 F.Supp.2d 84, 89 (D.D.C. 2012)). "The burden then shifts to plaintiffs to show that there is a genuine issue of material fact as to the making of the agreement." *Id.* "The Court will compel arbitration if the pleadings and the evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Fox v. Computer World Servs. Corp.,* 920 F.Supp.2d 90, 96 (D.D.C. 2013)).

**B.  Challenges to Arbitrations Clauses**

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the

parties have agreed to arbitrate or whether their agreement covers a particular controversy."

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). "[T]he question 'who has the

primary power to decide arbitrability' turns upon what the parties agreed about that matter. Did

the parties agree to submit the arbitrability question itself to arbitration?" *First Options of*

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). "The question whether the parties have

submitted a particular dispute to arbitration, *i.e.,* the '*question of arbitrability,*' is 'an issue for

judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' "

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Technologies,*

*Inc. v. Communications Workers,* 475 U.S. 643, 649 (1986); *First Options*, 514 U.S. at 944)

(emphasis in original)).

Section 2 of the Federal Arbitration Act ("FAA") "create[s] a body of federal substantive

law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."[5]

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (U.S. 1983). "To the

extent there are conflicts between state arbitration law and the FAA that would contravene the

pro-arbitration policies embodied in the FAA, the FAA applies and preempts such state laws."

---

[5] In its entirety, section 2 of the FAA is as follows:

> A written provision in any maritime transaction or a contract evidencing a
> transaction involving commerce to settle by arbitration a controversy thereafter
> arising out of such contract or transaction, or the refusal to perform the whole or
> any part thereof, or an agreement in writing to submit to arbitration an existing
> controversy arising out of such a contract, transaction, or refusal, shall be valid,
> irrevocable, and enforceable, save upon such grounds as exist at law or in equity
> for the revocation of any contract.

9 U.S.C. § 2.

*Haire*, 925 F.2d at 130 (citing *Preston v. Ferrer*, 552 U.S. 346, 360-63 (2008)). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70. Under section 2, such an agreement is valid "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

" '[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.' " *Rent-A-Center*, 561 U.S. at 70-71 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)). "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* at 70. Similarly, a challenge to the validity of an *arbitration* provision rather than to a *delegation* provision does not prevent a court from enforcing a specific agreement to delegate questions of arbitrability to an arbitrator. *See id*. at 71-72; *accord Brennan v. Opus Bank*, No. 2:13-CV-00094-RSM, 2013 WL 2445430, at *6-7 (W.D. Wash. June 5, 2013) ("It is only when a party challenges the delegation provision itself that the district court intervenes.") However, before an arbitrator can determine the question of arbitrability, the Court must consider any challenges to the validity of the delegation provision. *See Rent-A-Center*, 561 U.S. at 71–75; *cf. id*. at 71 ("If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4."). Such challenges, pursuant to the applicable state law, include contract defenses such as fraud in the inducement, duress, and unconscionability. *See id.* at 68, 70, 73.

## III. DISCUSSION

The Court first considers whether the parties have agreed to delegate to an arbitrator questions of arbitrability. The Court concludes that they have done so. The Court then considers Plaintiffs' challenges to the validity of those delegation agreements. The Court evaluates these challenges pursuant to North Carolina law,[6] and concludes that none of them succeed. Accordingly, the Court compels the arbitration of the question of arbitrability.

### A.  Delegation of Arbitrability

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the '*question of arbitrability,*' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' " *Howsam*, 537 U.S. at 83 (quoting *AT & T Technologies, Inc.*, 475 U.S. at 649; *First Options*, 514 U.S. at 944). Defendants argue that the parties have clearly and unmistakably submitted questions of arbitrability to an arbitrator by virtue of the incorporation of the rules of the American Arbitration Association in the ICSAs. Plaintiffs argue that the incorporation of these rules is insufficient to satisfy the "clear and unmistakable" standard. The Court agrees with Defendants that the parties have "clearly and unmistakably" submitted questions of arbitrability to an arbitrator.

The arbitration provision in each plaintiff's ICSA states that "any dispute regarding interpretation or enforcement of any of the parties' rights or obligations under this Agreement shall be resolved by binding arbitration according to the rules of the American Arbitration Association." Pls.' Response Facts ¶¶ 41 (Mercadante), 76 (Biddle), 125 (OHara), 157

---

[6] The parties do not contest the applicability of North Carolina law. Each ICSA included a choice of law provisions selecting North Carolina law. Pls.' Response Facts ¶¶ 41, 76, 125, 157, 163. Given the rule of severability imposed by the Federal Arbitration Act, the Court must consider that provision to be valid when evaluating the validity of the delegation provision. *See Buckeye*, 546 U.S. at 445.

(Jefferson's first ICSA); 163 (Jefferson's second ICSA). The AAA Employment Arbitration Rules and Mediation Procedures, in turn, provide for the arbitrator to rule on questions of arbitrability. *See* AAA Employment Arbitration Rules and Mediation Procedures, Rule 6.[7] Although the D.C. Circuit Court of Appeals has not yet directly addressed the question of whether the incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability to an arbitrator, *see Haire*, 925 F.Supp.2d at 132, numerous other circuits have done so and have concluded that "incorporation of the AAA rules constitutes clear and unmistakable evidence that the parties intended the question of arbitrability be answered by an arbitrator." *Id.*; *see, e.g.*, *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11-12 (1st Cir. 2009); *Agere Sys., Inc. v. Samsung Elec. Ltd.*, 560 F.3d 337, 339-40 (5th Cir. 2009); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 877-78 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1372-73 (Fed. Cir. 2006); *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *Terminix Int'l Co., LP v. Palmer Ranch Ltd.*, 432 F.3d 1327, 1332-

---

[7] Rule 6 of the AAA Employment Arbitration Rules and Mediation Procedures states:

> a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.
>
> b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.
>
> c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

*See* AAA Employment Arbitration Rules and Mediation Procedures, Rule 6.

33 (11th Cir. 2005). Indeed, a "recent D.C. Circuit opinion strongly suggests that the D.C. Circuit would view incorporation of the AAA Rules as satisfying the requisite standard." *Haire*, 925 F.Supp.2d at 132 (citing *Rep. of Argentina v. BG Group PLC*, 665 F.3d 1363, 1371 (D.C. Cir. 2012)). Others courts in this district have also concluded that the incorporation of the AAA rules is clear and unmistakable evidence of an agreement to delegate questions of arbitrability to an arbitrator. *See, e.g.*, *id.* at 133; *Oehme, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs.*, 902 F.Supp.2d 87, 97 (D.D.C. 2012); *Grynberg v. BP P.L.C.*, 585 F.Supp.2d 50, 54 (D.D.C. 2008). Accordingly, the Court concludes that the incorporation of the AAA rules constitutes clear and unmistakable evidence of the delegation of questions of arbitrability to an arbitrator.

Plaintiffs also argue that "Plaintiff-Contractors may bring an action in federal court **regardless of what is plead in any complaint,**" relying on the phrase "regardless of what is plead in any complaint" in the sentence preceding the arbitration provision in the ICSAs. Pls.' Supp. Mem. at 15 (emphasis in original). The Court addresses this argument here because, if Plaintiffs were correct, this language would undermine the clear and unmistakable evidence of the parties' delegation of questions of arbitrability to an arbitrator. In fact, however, the cited phrase has no relevance to the question of arbitrability; it only pertains to the provision in the ICSA stating that disputes pertaining to DBA insurance, the workers compensation scheme pursuant to the Defense Base Act ("DBA"), must be adjudicated in the "the United States Department of Labor or a federal court with jurisdiction to review such matters." Pls.' Response Facts ¶¶ 41, 76, 125, 157, 163. In other words, "regardless of what is plead in any complaint," the DBA scheme is the sole avenue for adjudicating workers compensation disputes emerging out of the ICSAs. But the issues in this action do not pertain to workers compensation claims, and Plaintiffs are not seeking review pursuant to the Defense Base Act. While the arbitration

provision follows immediately after the sentence describing the DBA scheme, it is wholly independent of it. Notwithstanding Plaintiffs' repeated references to the phrase "regardless of what is plead," the parties have clearly and unmistakably delegated questions of arbitrability to an arbitrator. The Court next considers challenges to the validity of these delegation agreements.

## B. Validity Challenges to the Delegation Agreement

Even though the agreement itself provides clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability to an arbitrator, the Court will only compel arbitration of those questions if the delegation agreement survives challenges to its validity. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. 70 (2010). A delegation agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party challenges the validity of a delegation agreement, the district court "must consider the challenge before ordering compliance." *Rent-A-Center*, 561 U.S. at 70. The challenge, however, must be directed specifically at the delegation agreement and not at "another provision of the contract, or to the contract as a whole."[8] *Id*. Indeed, earlier in the proceedings in this case, the Court denied Defendants' first motion to compel arbitration, without prejudice, in order to allow Plaintiffs to

---

[8] This calculus remains the same where the delegation agreement exists by virtue of the incorporation of the AAA rules. *See Brennan v. Opus Bank*, No. 2:13-CV-00094-RSM, 2013 WL 2445430, at *6-7 (W.D. Wash. June 5, 2013); *Getzelman v. Trustwave Holdings, Inc.*, No. 13-CV-02987-CMA-KMT, 2014 WL 3809736, at *5 (D. Colo. Aug. 1, 2014); *Fox v. Career Educ. Corp.*, No. 4:11 CV 1584 DDN, 2012 WL 1205155, at *4 (E.D. Mo. Apr. 11, 2012); *U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, No. 1:11CV371, 2013 WL 1332028, at *5 (E.D. Va. Mar. 29, 2013); *but see Paduano v. Express Scripts, Inc.*, No. 14-CV-5376 ADS ARL, 2014 WL 5431320, at *25, --- F.Supp.3d --- (E.D.N.Y. Oct. 27, 2014).

address the enforceability of the delegation agreement specifically. *See* Mem. Op. and Order, ECF No. 20, at 4-5.

Although Plaintiffs' briefing is not a model of clarity and precision,[9] Plaintiffs raise four contract defenses to the validity of the agreement: fraud in the inducement, duress, unilateral mistake, and unconscionability. Plaintiffs also argue that there was no meeting of the minds with respect to the agreement. However, Plaintiffs' claim that the agreement is invalid due to the absence of a meeting of the minds encompasses the other contract validity challenges rather than posing an independent challenge.[10] *See, e.g.*, Pls.' Supp. Response, at 2 ¶¶ 4-5. Yet, each of Plaintiffs' arguments fails either because it does not specifically address the delegation agreement itself as required by *Rent-A-Center* or because the challenge fails on the merits as a matter of law. Even after several rounds of briefing, Plaintiffs have failed to successfully challenge the enforceability of the delegation agreement.[11] The Court addresses these challenges in turn.

---

[9] The Court notes that Plaintiffs continue to ignore the Court's repeated warnings not to incorporate arguments from prior submissions. *Compare* Minute Order, dated May 1, 2013 ("The parties may not incorporate arguments in prior submissions.") *with* Pls.' Supp. Mem. at 13 ("Plaintiffs direct the Court to the original arguments and authorities it already submitted").

[10] Insofar as Plaintiffs "would direct the Court to its original arguments on lack of meeting of the minds, as well as authorities set out in their original Memorandum on no meeting of the minds between the parties, and no contract (or delegation clause) to enforce," Pls.' Supp. Mem. at 13, the Court notes again that the Court had previously warned Plaintiffs not to incorporate previous arguments by reference. Moreover, because the original arguments did not address the delegation agreement, even if those arguments were incorporated, those arguments could not pose a successful challenge to the validity of the delegation agreement.

[11] The Court notes at the outset that Plaintiffs' sole reference to delegation in the briefing submitted before discovery does not satisfy *Rent-A-Center*'s requirement. *See* Pls.' Mem. In Supp. of Their Opp'n to Defs.' Mot. to Compel Arbitration, ECF no. [26] at 23 (emphasis added). That reference only points the Court to an argument in still earlier briefing, which does not pertain to the validity of the delegation clause.

*1.  Fraud*

Plaintiffs argue that the agreements between Plaintiffs and Blackwater were invalid because of fraud.[12] In particular, Plaintiffs argue they were misled to believe that the ICSA was "just Security matters, or basic terms saying you understand you are going into a war zone and can't sue for what happens there" and because they were not given an opportunity to read the agreements. Pls.' Response at 17. Plaintiffs imply—but do not state—that they signed the agreements because of this purportedly fraudulent representation. While fraud is an available contract defense pursuant to North Carolina law, *see Massey v. Duke Univ.*, 503 S.E.2d 155, 158 (1998), this argument fails at the outset because Plaintiffs do not claim that the purported fraud invalidated the delegation agreement, as they must pursuant to *Rent-A-Center. See* 561 U.S. at 73. In their fraud argument, Plaintiffs only mention the arbitration agreement once and never reference the delegation provision. *See* Pls.' Response at 16-18. It is significant that, by contrast, Plaintiffs explicitly argue that the defenses of mistake and unconscionability apply to the delegation agreement. *See* Pls.' Supp. Mem. at 20 ("The mistake concerned a key issue … . This would apply equally to delegation clauses as to arbitration clauses."); *id.* at 21 ("Plaintiffs believe procedural and substantive unconscionability exist on both the question of any agreement to enter into arbitration and on the question of delegation.") Plaintiffs' arguments as to fraud "clearly [did] not go to the validity of the delegation provision." *Rent-A-Center*, 561 U.S. at 74. Therefore, the Court "must treat it as valid under § 2, and must enforce it under §§ 3 and 4,

---

[12] The Court notes the portion of Plaintiffs' brief pertaining to fraud contains no specific references to material in the record and no citations to applicable law that could support a conclusion that the agreement in question was fraudulently induced. *See* Pls.' Supp. Mem. at 16-18. Plaintiffs' sole citation is a quotation stating the general proposition that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at 17-18 (quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 72.

### 2. Duress

Plaintiffs also argue that the ICSAs are unenforceable because they signed those agreements under duress.[13] Specifically, Plaintiffs argue that the detrimental economic impact of refusing to sign the agreement and the disparity in power between Plaintiffs and Defendants' agents "caused them to sign under duress." Pls.' Supp. Mem. at 19. This argument fails because it does not target the delegation agreement as *Rent-A-Center* requires. The argument is directed at the signing of the ICSA overall, with no references to the delegation provision. *See id*. at 18-20. The Court once again finds the absence of a reference to the delegation provision in the duress argument significant given that Plaintiffs reference the delegation provision in their mistake and unconscionability arguments. *See id*. at 20-21. Because Plaintiffs have not challenged the validity of the delegation provision in their duress argument, the Court "must treat it as valid under § 2." *Rent-A-Center*, 561 U.S. at 72.

### 3. Unilateral Mistake[14]

Unlike Plaintiffs' arguments on duress and fraud, Plaintiffs assert that their unilateral mistake argument "would apply equally to delegation clauses as to arbitration clauses." Pls.' Supp. Mem. at 20. By arguing that the delegation agreement is not valid, Plaintiffs satisfy the threshold requirement established by *Rent-A-Center*, *see* 561 U.S. at 72. Plaintiffs argue that the

---

[13] Like Plaintiffs' fraud argument, Plaintiffs' duress argument contains no specific references to facts from the record that could provide support for the argument. *See* Pls.' Supp. Mem. at 19-20.

[14] Plaintiffs' arguments with respect to this contract defense, too, contain no citations to facts from the record. Nor do they contain any citations relevant to North Carolina law, the body of law that governs the validity of the delegation agreement at issue.

"mistake concerned a key issue that Blackwater knew they were concealing, that the employees would have wanted to know, and were given the mistaken impression the agreement was only about National Security/Confidentiality." Pls.' Supp. Mem. at 20. Plaintiffs further argue, "Plaintiffs mistakenly believed this was not an arbitration agreement but instead had to do with National Security, and general matters related to Blackwater not being liable due to going into a war zone." *Id*. Even assuming that Plaintiffs' assertions are adequately supported by the record, this argument fails as a matter of law.

Pursuant to North Carolina law, "[t]he mistake of one party is sufficient to avoid a contract when the other party had reason to know of the mistake or caused the mistake." *Creech v. Melnik*, 495 S.E.2d 907, 912 (N.C. 1998) (quoting *Howell v. Waters*, 347 S.E.2d 65, 69 (N.C. App. 1986), *disc. rev. denied*, 351 S.E.2d 747 (1987)). Plaintiffs' argument, on its face, satisfies this initial requirement by claiming that Plaintiffs were mistaken about the nature of the agreement and that this mistake was caused by Blackwater's agents. However, North Carolina law requires more:

> To afford relief, the mistake must be of a certain nature. The fact about which the parties are mistaken must be "an existing or past fact." The mistaken fact must also be material, which has been described to mean the following: "[I]t must be as to a fact which enters into and forms the basis of the contract, or in other words it must be of the essence of the agreement, the *sine qua non,* or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties."

*Roberts v. Century Contractors, Inc.*, 592 S.E.2d 215, 219 (N.C. App. 2004) (quoting *Howell*, 347 S.E.2d at 69) (citations omitted). The mistake to which Plaintiffs point—about the nature of the contract and its contents—is not a mistake about an "existing or past fact" that could satisfy this standard. Plaintiffs do not cite any North Carolina case standing for the proposition that a qualifying mistake could be one about the contract itself. Instead, this term appears to be limited to mistakes outside of the four corners of the contract—facts about the world as it existed at the

16

time of the contract or at an earlier time. *See, e.g., Roberts*, 592 S.E.2d at 218 (mistaken medical

diagnosis); *Howell*, 347 S.E.2d at 72 (mistake concerning property boundaries); *Creech*, 495

S.E.2d at 912 (mistake concerning past medical treatment); *Deans v. Layton*, 366 S.E.2d 560,

564 (N.C. App. 1988) (mistake concerning percentage of land that would drain properly). This

pattern is consistent with the North Carolina Court of Appeals' definition of a mistake as "the

efficient cause of the agreement." *Roberts*, 592 S.E.2d at 219. A fact can only be the cause of the

agreement if it exists outside of and independent of the agreement; by contrast, neither the

agreement nor its description can be its own cause. Therefore, the purported mistake as to the

nature of the contract is not one that qualifies for the invalidation of a contract pursuant to North

Carolina law.

 Furthermore, Plaintiffs do not show how this mistake is material to the agreement whose

validity is currently before the Court: the delegation agreement. *Rent-A-Center* allows Plaintiffs

to challenge a delegation provision by arguing that a feature in common with the entire

agreement—here, the purported mistake about the nature of the ICSA agreement and its

contents—renders the delegation provision invalid because of that mistake. *See Rent-A-Center*,

561 U.S. at 74 ("It may be that had Jackson challenged the delegation provision by arguing that

these common procedures *as applied* to the delegation provision rendered *that provision*

unconscionable, the challenge should have been considered by the court.") However, Plaintiffs'

argument is missing a necessary link: Plaintiffs do not show how the mistake regarding the

nature of the entire contract affects the validity of the delegation provision specifically.

Moreover, given that only a material mistake can provide grounds to void an agreement, *see*

*Roberts*, 592 S.E.2d at 519, Plaintiffs must show that the mistake in question is material to the

delegation agreement, and Plaintiffs have not even attempted to do so. Indeed, insofar as

Plaintiffs argue that the mistake was concealment of the fact that there was an arbitration clause in the contract, this mistake cannot logically be the cause of the delegation agreement. Accordingly, Plaintiffs do not lodge a successful challenge to the delegation agreement based on the doctrine of unilateral mistake.

### 4.   Unconscionability

Plaintiffs' unconscionability argument survives the threshold inquiry of *Rent-A-Center* because they assert that the delegation agreement is unconscionable.[15] *See* Pls.' Supp. Mem. at 21 ("Plaintiffs believe procedural and substantive unconscionability exist both on the question of any agreement to enter into arbitration and on the question of delegation."); *cf. Rent-A-Center*, 561 U.S. at 74 ("It may be that had Jackson challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court."). The Court, here, considers Plaintiffs' arguments only insofar as Plaintiffs argue that the delegation agreement was unconscionable; insofar as Plaintiffs claim that the agreement as a whole was unconscionable or even that the arbitration provision was unconscionable, the Court cannot consider those arguments at this stage of the proceedings.

To demonstrate unconscionability pursuant to North Carolina law, "a party must demonstrate both procedural unconscionability and substantive unconscionability." *Torrence v.*

---

[15] The Court notes, however, that Plaintiffs did not reference the delegation agreement in the additional briefing that the Court requested with respect to the impact of *Torrence v. Nationwide Budget Finance*, 753 S.E.2d 802, 807 (N.C. App. 2014), on the unconscionability analysis. *See* Pls.' *Torrence* Supp. at 1-10; Pls.' *Torrence* Reply at 1-8. While Plaintiffs present several bases for finding the agreement as a whole unconscionable—such as the illusory nature of the arbitration agreement and the one-sidedness of the arbitration clause—Plaintiffs do not link these bases to unconscionability regarding the delegation agreement. *See, e.g.*, Pls.' *Torrence* Supp. at 8.

*Nationwide Budget Finance*, 753 S.E.2d 802, 807 (N.C. App. 2014) (citing *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 363, 370 (N.C. 2008)). "While both elements of unconscionability must be present, a court may rule that a contract is unconscionable 'when [the] contract presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa.' " *Id.* (quoting *Tillman*, 655 S.E.2d at 370) (emendations in original). The Court considers substantive unconscionability first. Because the Court concludes that there is no substantive unconscionability with respect to the delegation agreement, the Court does not consider whether or not procedural unconscionability exists with respect to that agreement.

Plaintiffs only point to one feature of the delegation agreement that is substantively unconscionable: the shifting of attorneys' fees and expenses from Defendants to Plaintiffs. *See* Pls.' Supp. Mem. at 23. But this is precisely the sort of provision that the North Carolina Court of Appeals determined could not support an unconscionability claim. *See Torrence*, 753 S.E.2d at 811-12 ("We can only construe this language as eliminating the type of cost analysis applied by the North Carolina Supreme Court in *Tillman*."). In *Torrence*, the North Carolina Court of Appeals analyzed the impact of the Supreme Court's decisions in *A T & T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011), and *American Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304 (2013), on *Tillman*, "[t]he leading case in North Carolina dealing with unconscionability in the context of an agreement to arbitrate." 753 S.E.2d at 807. In *Concepcion*, the Supreme Court concluded that arbitration agreements could not be invalidated "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." 131 S.Ct. at 1746. *See Italian Colors*, 133 S.Ct. at 2311 (holding that "FAA does not sanction such a judicially created superstructure" that requires judicial analysis of individual claims before compelling arbitration). The *Torrence* court concluded that "underlying

those decisions was a broader theme that unconscionability attacks that are directed at the arbitration process itself will no longer be tolerated." *Id.* at 811. The *Torrence* court then concluded that the bases for substantive unconscionability found by the North Carolina Supreme Court in *Tillman* had been undermined by *Concepcion* and *Italian Colors. Id.* at 812. Indeed, the *Torrence* court specifically concluded that high arbitration costs—the only basis on which Plaintiffs argue that there is substantive unconscionability with respect to the delegation agreement—could no longer be a basis for substantive unconscionability. *See id.*; *see also Italian Colors*, 133 S.Ct. at 2311 ("But the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy."). The shifting of arbitration costs to Plaintiffs does not constitute substantive unconscionability.[16]

Plaintiffs' reliance on *King v. Bryant*, 763 S.E.2d 338, 2014 WL 3510481 (N.C. App. July 15, 2014) (unpublished disposition), *review allowed*, No. 294PA14, 2014 WL 7227976 (N.C. Dec. 18, 2014), in order to distinguish *Torrence* is unavailing. *See* Pls.' *Torrence* Supp. at 5-9; Pls.' *Torrence* Reply at 3-5. In *King v. Bryant*, in an unpublished disposition, the North Carolina Court of Appeals held that, in the "limited factual circumstances presented," an arbitration agreement between a medical practice and a patient was unconscionable. 763 S.E.2d 338, 2014 WL 3510481 at *11. The *King* panel located sufficient substantive unconscionability in, first, the fact that "[t]he agreement does not mention that [the patient] is forfeiting his right to a jury or a

---

[16] Elsewhere in Plaintiffs' brief, Plaintiffs reference various ways in which the ICSA is one-sided. Although Plaintiffs do not cite this as a basis for unconscionability, the Court notes that, insofar as Plaintiffs argue that any one-sidedness of the arbitration agreement makes it unconscionable, this argument is similarly unavailable as a result of the Supreme Court's decision in *Concepcion*. *See Torrence*, 753 S.E.2d. at 812 ("the one-sided nature qualify of an arbitration agreement is not sufficient to find it substantively unconscionable."). Moreover, the only question before the Court is whether the delegation agreement is unconscionable. But the delegation agreement itself is not one sided—it delegates all questions of arbitrability to an arbitrator, with no distinction among the parties.

judge" and, second, that it did not intelligibly communicate that the patient was not required to accept the agreement to see his physician. *Id*. at *10. Neither of these circumstances are present here. First, in the present case, each ICSA included a warning that the Plaintiffs were waiving their right to a judge or jury. *See* Merc. Dep., Ex. 3 ¶ 20.10 (waiver of jury trial); Biddle Dep., Ex. 2 ¶ 20.6 (same); Jefferson Dep. Ex. 3, ¶ 20.10 (same); OHara Dep., Ex. 4 ¶ 19.6 (same). Second, Plaintiffs neither pointed to authority for the proposition that an employment relationship, such as the one at issue here, *could not* be lawfully contingent on the signing of an arbitration agreement, nor have Plaintiffs argued that the ICSAs are unconscionable because of such a condition. Even if *King* were precedential, it would not support the conclusion that the delegation agreement before the Court is substantively unconscionable. Indeed, citing *Torrence*, the *King* panel confirmed that "the cost of arbitration … is not relevant to the issue of substantive unconscionability." *King*, 2014 WL 3510481 at *10. Given that arbitration costs are the only basis for unconscionability that Plaintiffs present with respect to the delegation agreement, *King* undermines Plaintiffs' arguments. Finally, Plaintiffs emphasize the nature of the war-related employment in which they engaged in order to analogize this case to *King*. However, an agreement establishing an employment relationship, even a relationship that is colored by the military context of that employment, does not resemble the circumstances in *King*, where a "confidential, physician-patient, fiduciary relationship" created heightened requirements for notice and disclosure by the medical practice presenting the agreement. *Id*. at *11. Insofar as *King* shows that there are some circumstances in which an arbitration agreement is unconscionable, it does not suggest that this action presents those circumstances; in particular, *King* does not suggest that this is a situation where the delegation agreements at issue are unconscionable.

While it is not clear the extent to which Plaintiffs continue to rely on *Winston v. Academi Training Center, Inc.*, 2013 WL 989999 (E.D.Va. Mar 13. 2013), an unpublished decision from the Eastern District of Virginia issued *prior* to the issuance of *Torrence*, any such reliance in unavailing.[17] *Winston* does not address the unconscionability of a delegation agreement as this case does. In *Winston*, the court found that the federal and state claims in that action were not arbitrable. *Id.* at *2-3. Indeed, it may yet be true that the claims in this action are not arbitrable. However, the Court today is only called on to decide whether the agreement delegating the question of arbitrability is enforceable, and *Winston* says nothing about the enforceability of a delegation agreement like the one before the Court. Moreover, *Winston* was issued prior to *Torrence*, the most recent North Carolina precedent regarding unconscionability challenges to arbitration agreements. Insofar as *Winston* is inconsistent with *Torrence*, *Winston* must yield to this more recent precedent of the North Carolina Court of Appeals.

In sum, because the Court concludes that no substantive unconscionability exists with respect to the delegation agreement, the Court need not evaluate whether or not procedural unconscionability exists. *See Torrence*, 753 S.E.2d at 807 (at a minimum, some substantive unconscionability is necessary for a successful unconscionability claim).

\*      \*      \*

The Court concludes that none of the contract defenses that Plaintiffs present—fraud, duress, unilateral mistake, and unconscionability—invalidate the arbitration delegation

---

[17] Plaintiffs' sole reference to *Winston* in the supplemental briefing that the Court ordered with respect to *Torrence* is to show that Plaintiffs provided additional evidence of procedural unconscionability, evidence that originated in *Winston*. Pls.' *Torrence* Reply at 6-7. However, because the Court concludes that Plaintiffs have not shown any evidence of substantive unconscionability with respect to the delegation agreement, the Court does not address the question of procedural unconscionability. Therefore, any such evidence of procedural unconscionability is not relevant to the Court's conclusions.

agreements in their respective ICSAs. Accordingly, the Court need not consider Defendants' argument that, even if the delegation clauses in the ICSAs were invalid, that the delegation agreement remains valid due to its purported incorporation in the subsequent schedules that the Plaintiffs signed.[18] The Court concludes that the arbitration delegation provision is valid, and all questions of arbitrability must be decided by an arbitrator in the first instance, including "any challenge to the validity of the Agreement as a whole."[19] *Rent-A-Center*, 561 U.S. at 72.

## C. Staying This Action

The only question remaining is whether the Court should stay this action or dismiss it upon granting the motion to compel arbitration. Because the Court presently only decides that an arbitrator must decide the gateway questions of arbitrability and does not now compel the arbitration of the substantive claims in this action, the Court concludes that it is appropriate to stay the action during the pendency of the arbitration.

---

[18] The Courts notes, however, that the Defendants appear to misconstrue the nature of any incorporation that is occurring. Each subsequent schedule states, "This Schedule [] is incorporated *into and made part of* that certain agreement entitled 'Independent Contractor Service Agreement' between Blackwater and Contractor." Defs.' Supp. Statement ¶ 47-48, 52, 55, 94-95, 98-99, 104, 134, 143, 174, 178, 183-84, 188-89 (emphasis added). Despite Defendants' repeated claims that the *ICSA* is incorporated into the subsequently-signed *schedules*, see, e.g., Defs.' Supp. Reply at 4, the reverse is true: by the plain language of the schedules, they are incorporated into the previously-signed ICSA. Therefore, this is not a case where a subsequent agreement incorporates the language of a previous agreement and thereby binds the parties to that earlier language. *Contrast Booker v. Everhart*, 240 S.E.2d 360, 363 (N.C. 1978) (contract incorporating language of earlier agreement construed as repeating the earlier language incorporated therein).

[19] While challenges as to "whether any agreement … was ever concluded" must be resolved by the Court rather than by an arbitrator, *Buckeye*, 546 U.S. at 444 n.1, the challenges that Plaintiffs bring—based on fraud, duress, mistake, and unconscionability—do not fit into this narrow category. *See Rent-A-Center*, 561 U.S. at 69-71; *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140 (9th Cir. 1991).

The Court need not resolve the question of whether the Court would dismiss the case if it were compelling arbitration on all of the substantive claims in this action. *Compare White v. Four Seasons Hotels & Resorts*, 999 F. Supp. 2d 250, 261-62 (D.D.C. 2013) (staying case), *with Ryan v. BuckleySandler, LLP*, No. CV 13-01816, --- F.Supp.3d ---, 2014 WL 4748241, at *7 (D.D.C. Sept. 25, 2014) (dismissing case). Nor does the Court need to address the circuit split regarding the question whether district courts have the discretion to dismiss an action upon compelling arbitration on all claims. *See BuckleySandler,* 2014 WL 4748241, at *5 (noting that the D.C. Circuit Court of Appeals has not yet definitively resolved this issue). Because the Court compels arbitration with respect to the question of arbitrability, it remains plausible that the Court may yet be required to consider some or all of the claims in this action on the merits. Therefore, dismissing this action would be premature. *See, e.g., Boateng v. Gen. Dynamics Corp.*, 473 F. Supp. 2d 241, 252 (D. Mass. 2007) (staying action upon compelling arbitration with respect to arbitrability).

The language used by several of the Circuits that permit dismissal of an action upon compelling arbitration suggests that such discretion may not extend to circumstances where a district court compels arbitration on arbitrability. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("BSR's motion to dismiss was not a proper § 3 motion because the sole remedy available under § 3 is a stay. Notwithstanding the terms of § 3, however, dismissal is a proper remedy when *all of the issues* presented in a lawsuit are arbitrable.") (emphasis added); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.") (emphasis in original); *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) ("This court held that 9 U.S.C. section 3

… does not preclude summary judgment when *all claims* are barred by an arbitration clause.") (emphasis added); *see also Sher v. Goldman Sachs*, No. CIV. CCB-11-2796, 2012 WL 1377066, at *6 (D. Md. Apr. 19, 2012) ("Importantly, *Choice Hotels* prescribes the dismissal of actions where the district court finds *all* claims to be arbitrable. In this case, the court has found that the arbitrator should decide whether TMST's claims are arbitrable. Therefore, the court will stay the action rather than dismiss it while the arbitrator makes that determination.") (emphasis in original). *But see Innospec Ltd. v. Ethyl Corp.*, No. 3:14-CV-158-JAG, 2014 WL 5460413, at *4 (E.D. Va. Oct. 27, 2014) (applying *Choice Hotels International* and dismissing without prejudice upon compelling arbitration on arbitrability). In this action, the Court has not yet decided that *any* of the individual claims brought by Plaintiffs are arbitrable—let alone *all* of those claims; the Court has only decided that an arbitrator must decide whether Plaintiffs' claims are arbitrable. Accordingly, the Court concludes that dismissal at this point is not appropriate.

However, the Court's conclusion that a stay is warranted at this time does not prevent Defendants from seeking dismissal of this action if an arbitrator determines that all the issues in this case are, indeed, arbitrable. *See Visibility Corp. v. Schilling Robotics, LLC*, No. CIV.A. 10-12280-JGD, 2011 WL 5075816, at *6 (D. Mass. Oct. 25, 2011). In order to facilitate the Court's evaluation of the appropriateness of dismissal at the appropriate time, the parties shall file a notice—after an arbitrator determines the question of arbitrability—informing the Court whether any claims remain for the Court to address.

## IV. CONCLUSION

For the foregoing reasons, Defendants' [24] Second Renewed Motion to Compel Arbitration is GRANTED. In accordance with the parties' "clear and unmistakable" delegation of questions of arbitrability to an arbitrator, the parties must address their arguments as to whether

the claims in this dispute are arbitrable to an arbitrator. Accordingly, this action is STAYED

during the pendency of the arbitration. An appropriate Order accompanies this Memorandum

Opinion.

Dated: January 15, 2015

_____/s/_____

COLLEEN KOLLAR-KOTELLY

United States District Judge
