# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

C.J. MERCADANTE, *et al.*,
    Plaintiffs

v.

XE SERVICES, LLC, *et al.*,
    Defendants

Civil Action No. 11-1044 (CKK)

**MEMORANDUM OPINION**
(November 29, 2017)

Nearly three years ago, the Court ordered Plaintiffs to pursue arbitration on the threshold issue of whether their claims are arbitrable. Since that time, Plaintiffs have made only anemic attempts to initiate arbitral proceedings, and in their most recent communications with the Court, have admitted that "they will not pursue arbitration any further . . . ." Notice Concerning Arbitration, ECF No. 83, at 1-2. Although Plaintiffs continue to represent that they "oppose dismissal," *id.*, there is no question that Plaintiffs have made the strategic decision to not pursue arbitration in order to compel dismissal of this lawsuit, so that they may pursue an appeal to the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit").

Presently before the Court are Defendants' [71] Motion to Dismiss and [77] Motion to Reinstate the Motion to Dismiss. Defendants seek dismissal of this lawsuit pursuant to Federal Rule of Civil Procedure 41(b) for Plaintiffs' failure to prosecute this action in accordance with the Orders of this Court. In a prior Memorandum Opinion, the Court held the Motion to Dismiss in abeyance, providing Plaintiffs with "one *final* opportunity to move forward with the arbitration proceedings," despite concluding that Plaintiffs had failed to pursue their case with the requisite diligence. Aug. 19, 2016 Mem. Op. and Order, ECF No. 75 ("Aug. 2016 Op."), at 8 (emphasis in original). Plaintiffs have intentionally squandered that opportunity. The Court has provided

1

Plaintiffs with every reasonable accommodation to comply with the Orders of this Court. Plaintiffs have not done so, and by their own admission, will not do so. Accordingly, the Court has no choice but to **GRANT** Defendants' Motion to Reinstate and Motion to Dismiss. This matter is **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

The Court has presented much of the factual and procedural background relevant to the pending motions in its August 19, 2016 Memorandum Opinion and Order and its February 13, 2017 Order, ECF No. 82 ("Feb. 2017 Order"). Nevertheless, to facilitate a complete record of this matter, the Court memorializes in full the sequence of events that has led to the dismissal of this lawsuit for want of prosecution.

The August 2016 Opinion relays the procedural history of this action following the Court's ruling on Defendants' Motion to Compel Arbitration:

> On January 15, 2015, the Court ordered the parties to "proceed to arbitration in order for an arbitrator to determine, in the first instance, whether the claims in this action are arbitrable." Order, ECF No. 63. Subsequently, after the parties' exchanged e-mails regarding future proceedings, Plaintiffs filed a Motion for Reconsideration or in the Alternative for Certification of Interlocutory Appeal, regarding this Court's January 15, 2015, Order, which Defendants opposed. The Court denied that motion in its entirety. The Court explained that, if Plaintiffs continued to seek relief on the claims they brought in this case, they were required to proceed to arbitration as previously ordered by the Court. *See* Mem. Op. and Order, ECF No. 69, dated Aug. 13, 2015.
>
> In the aftermath of the Court's decision on the motion for reconsideration, Plaintiffs asked Defendants whether they would consent to arbitration in Washington, D.C. Defendants responded that they insisted on arbitration in the locations within North Carolina specified in the underlying agreements with Plaintiffs. *See* Thorne Decl., ECF No.71-2, ¶¶ 9-10. For six months, there was no further correspondence between the parties in the time between September 2015 and March 2016.
>
> On March 25, 2016, Plaintiffs submitted a Demand for Arbitration to the American Arbitration Association ("AAA"), under its rules for employment cases. Def.'s Mot., Ex. F, at 31. The demand encompassed class claims, as well as the individual claims of the four individual Plaintiffs in this case. *See id.* at 1 ("Individual and

class action on behalf of all similarly situated employees"); *id.* ¶¶ 34-43 (setting out basis for class claims). The AAA acknowledged receipt of Plaintiffs' demand, including a payment of $200. *Id.*, Ex. G, at 1. The letter explained that "[t]he preliminary filing fee under the Supplementary Rules for Class Arbitration is $3,350, of which claimants have paid $200." *Id.* The letter further stated that "to proceed with administration, we request the $3,150 balance of the filing fee be submitted at this time." *Id.* The AAA informed Plaintiffs that this payment was due on April 7, 2016. *Id.* On April 21, 2016, the AAA sent a follow-up letter to Plaintiffs indicating that the payment required by the March 29, 2016, letter had not been received. *Id.*, Ex. H, at 1. Pursuant to the follow-up letter, payment was due on April 30, 2016. *Id.* at 2. Subsequently, the AAA sent additional follow-up correspondence on June 10, 2016, by e-mail, indicating that no payment had yet been made. *Id.*, Ex. I. The e-mail further stated that Plaintiffs were required to submit the balance of the fee by June 17, 2016, and that "[a]bsent receipt of the filing fee by June 17, we will administratively close our file." *Id.* Plaintiffs' counsel responded to that e-mail with a one-line e-mail stating only the following: "Please proceed on the individual claims. That's what we were filing under." *Id.*, Ex. K. Representatives from the AAA's Employment Filing Team responded as follows on June 13, 2016:

> Good Evening,
>
> Should claimants desire to proceed, we request that each claimant submit an individual demand for arbitration, along with a copy of the applicable arbitration agreement, and the appropriate filing fee.
>
> If we do not receive individual demands and the filing fee by June 20, 2016, we will close our file.
>
> If you have any questions, please email employmentfiling@adr.org, and we will be happy to assist you. Kindly copy the opposing party's representative on any response to this e-mail.

*Id.* Plaintiffs did not respond to that communication. On June 22, 2016, the AAA's Employment Filing Team sent the parties a letter stating the following:

> On March 29, 2016, April 21, 2016, and June 13, 2016, claimant was notified that the filing requirements for the above matter have not been met. The filing deficiency has not been cured. Accordingly, we have administratively closed our file without prejudice.

*Id.*, Ex. L. The letter further stated that "[i]n the future should you decide to resubmit this matter, please provide all the requisite information along with the appropriate filing fee." *Id.*

Aug. 2016 Op. at 1–4. Shortly after the AAA administratively closed Plaintiffs' abortive attempt at arbitration, Defendants moved to dismiss for want of prosecution. In its initial ruling on that

motion, the Court noted that it was "not until March 25, 2016, that Plaintiffs filed their demand for arbitration with the AAA, [which was] *seven months* after the Court resolved Plaintiffs' motion for reconsideration and *fourteen months* after the Court initially ordered arbitration in this case." Aug. 2016 Op. at 5. Moreover, the Court noted that even after Plaintiffs filed for arbitration, "[r]ather than complying with the instructions from the AAA, Plaintiffs simply failed to respond to the communications from the AAA regarding their claims," and even after they replied, "Plainitffs failed to comply with the AAA's requirement[s]—of which they were directly notified . . . ." *Id*. As a result, as of August 2016, more than *eighteen months* after the Court had directed Plaintiffs to pursue arbitration, the Court was faced with the reality that Plaintiffs had made no diligent and concerted effort to arbitrate their dispute. Nevertheless, because Plaintiffs represented that they were "seeking to have [their] individual claims reinstated in arbitration," the Court provided Plaintiffs "one *final* opportunity to comply with the requirements of the AAA and to move forward with the arbitration proceedings." *Id*. at 8. In that regard, the Court ordered Plaintiffs to file a status report no later than October 19, 2016 "regarding the arbitration of the claims brought in this action . . . ." The Court also emphasized, in no uncertain terms, that:

> [I]f Plaintiffs seek to continue to pursue the claims in this case, they must file and perfect arbitration demands before the AAA, including the payment of the required fees as set by the AAA, as well as demonstrate *continued progress* in pursuing those arbitration proceedings, by the date of that Status Report. **Failure to do so risks the possibility that the Court will dismiss this case for want of prosecution at that time.**

*Id*. at 9.

The February 2017 Order begins where the August 2016 Opinion left off:

On October 6, 2016, and less than two weeks before [the] Status Report regarding the progress of the arbitration was due with the Court, Plaintiffs filed a second demand for arbitration with the AAA. Mot. to Reinstate at 1–2. However, because the AAA determined that 'this dispute arises from an independent contractor agreement,' it informed the parties that 'the AAA must proceed to administer this

4

as a commercial matter under our Commercial Arbitration Rules.' Mot. to Reinstate, Attach. 1 at 1. The AAA added that the 'parties are free to raise the issue of classification to the arbitrator once selected.' In light of this classification, Plaintiffs were required to pay a filing fee that was potentially higher than the $800 they had already paid under the expectation that their arbitration would proceed as an employment action. However, the correspondence from the AAA also states that

> the filing fee is based on the amount of the claim for compensatory damages. The claimant has not provided us with a claim amount for compensatory damages; therefore, we request that claimant provide us with correspondence indicating a claim amount. . . . If claimant cannot provide an exact claim amount, we will accept a statement of the estimated range in which the claim amount falls.

Absent receipt of this information from Plaintiffs, the AAA stated that it would apply a "$7,000 fee for claims up to $10 million." *Id.*

Defendants filed their [77] Motion to Reinstate on October 19, 2016. Plaintiffs submitted their [78] Response on October 31, 2016, contending that they should not be required "to pay an exorbitant fee of $7,000 for the privilege of finding out what the answer is [to the arbitrability question], and perhaps to have the entire matter referred back to this Court as non-arbitrable," but otherwise conceding that they had taken no further steps to pursue the arbitration. In light of this inaction, on December 7, 2016, the Court issued a Minute Order instructing the parties to file "a Joint Status Report on or before December 21, 2016, in which they provide the Court with an update regarding the status of the arbitration proceedings, if any, pertaining to the claims brought in this case. Specifically, the parties shall advise the Court of any progress made, in the intervening period of 37 days since Plaintiffs' most recent submission to the Court . . . .' The requested [80] Status Report was filed on December 12, 2016, and informed the Court that no further action had been taken by Plaintiffs to pursue arbitration other than to attempt to confer with Defendants regarding "allocating fees to pursue arbitration," a conversation that Defendants declined to have. Accordingly, by Minute Order dated December 20, 2016, the Court instructed the parties to have that discussion and to advise the Court of its outcome. On December 21, 2016, Defendants filed a [81] Status Report, which represented that they were unable to make contact with Plaintiffs' counsel, and informed the Court that they were unaware of any further progress by Plaintiffs in pursuing the arbitration.

The Court subsequently noticed a hearing on February 13, 2017 on the [71] Motion to Dismiss and [77] Motion to Reinstate the Motion to Dismiss. During the course of that hearing, Plaintiffs' counsel made clear that since he filed the renewed demand for arbitration with the AAA on October 6, 2016, he had taken no further steps to pursue the arbitration. In particular, despite his objections regarding the onerous nature of the fees imposed by the AAA, Mr. Bloch has failed to take two crucial actions that could potentially reduce the burden of those fees on his clients.

5

> First, he has failed to provide the AAA with either a definite claim amount, or an estimate of the claim amount, which would allow the AAA to assess a filing fee lower than the $7,000 it charges for claims up to $10 million. Second, although Mr. Bloch is aware that the AAA provides fee waivers for claimants that fall below certain income thresholds, he informed the Court had he has yet to seek fee waivers on behalf of his four individual clients, who Mr. Bloch believes are disabled and currently unemployed. In this context, Mr. Bloch also raised the possibility that he would prefer to consent to dismissal rather than further pursue arbitration and related proceedings in this Court. Upon further inquiry by the Court, however, Mr. Bloch withdrew this position.

Feb. 2017 Order, at 1–3.

In short, more than **24 months** since the Court initially ordered Plaintiffs to proceed to arbitration, Plaintiffs had still failed to even *initiate* arbitration proceedings, let alone proceed to adjudicate the threshold issue of arbitrability as ordered by the Court in January 2015. Nevertheless, although the Court was "mindful of its prior admonitions requiring Plaintiffs' counsel to pursue arbitration expeditiously in a manner consistent with the Court's Orders," and acknowledged "Defendants' strenuous objections to any further proceedings in this matter," the Court declined to dismiss the case. Rather, the Court noted that while Plaintiffs' counsel had objected to the purportedly onerous filing fees charged by the AAA, he had failed to take two actions that could result in the elimination or reduction of those fees; namely, seeking fee waivers on behalf of the individual plaintiffs who would pursue arbitration, and providing the AAA with a more definite claim amount for each plaintiff, which would result in a lower filing fee than the default $7,000 charged by the AAA for claims up to $10 million. As a result, the Court ordered Plaintiffs' counsel to file a notice with the Court no later than February 24, 2017 "indicating whether or not he has pursued the two actions described above, and if he has not, indicating whether or not Plaintiffs at that juncture oppose dismissal of this matter for want of prosecution." *Id*.

Plaintiffs timely filed that notice, and indicated that:

6

> Counsel for Plaintiffs has investigated the issue of fees before AAA, as well as their program for applying for waiver of filing fees, and has concluded it would be futile to pursue the waiver of fees as Plaintiffs would not qualify. In addition, the amount of fees based on the amount in controversy per claim is more than Plaintiffs can afford and are exorbitant. Each of the Plaintiffs has been found to be permanently disabled based on PTSD and physical injuries.

ECF No. 83, at 1. Beyond this statement, Plaintiffs' counsel provided no additional information on why Plaintiffs would not qualify for an AAA fee waiver, or what specific steps he had taken to confirm this view; how he had determined the amount of fees that the AAA would charge; or what the individualized claim amount was for each Plaintiff, by which the AAA would determine the filing fee. Counsel then represented, in no uncertain terms, that "Plaintiffs give notice that they will not pursue AAA arbitration any further and will pursue their appeal rights of the prior orders of the Court if the Court dismisses this action involuntarily for want of prosecution under [Federal Rule of Civil Procedure 41(b)]." *Id*. at 1–2. In their response to Plaintiffs' notice, Defendants informed the Court that as of the date the notice was filed, Plaintiffs' counsel had not been in contact with the AAA since February 6, 2017—one week before the Court issued the February 2017 Order. ECF No. 84, at 2, Ex. A. Consequently, whatever "investigation" Plaintiffs' counsel may have undertaken with respect to a possible waiver or reduction in fees from the AAA, it involved no consultation with the very persons that could facilitate such a waiver or reduction.

Following Plaintiffs' notice, the Court issued a Minute Order on March 15, 2017 that excused the parties "from their obligation to file a Joint Status Report on March 17, 2017 'informing the Court of the progress of the arbitration as of that time,' as previously ordered by the Court, *see* ECF No. 82," given Plaintiffs' representation that they would not pursue arbitration. Ever hopeful, however, the Court added that if "there has in fact been progress in pursuing arbitration, . . . Plaintiffs shall fill a notice on the docket indicating as much." No such notice has been filed.

7

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 41(b), "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules] or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b); *see also* LCvR 83.23 ("A dismissal for failure to prosecute may be ordered by the Court upon motion by an adverse party, or upon the Court's own motion."). "A Rule 41(b) dismissal is proper if, in view of the entire procedural history of the case, the litigant has not manifested reasonable diligence in pursuing the cause." *Bomate v. Ford Motor Co.*, 761 F.2d 713, 714 (D.C. Cir. 1985). Consequently, "[a] lengthy period of inactivity may . . . be enough to justify dismissal under Rule 41(b)." *Smith-Bey v. Cripe*, 852 F.2d 592, 594 (D.C. Cir. 1988); *see also Cavezza v. U.S. Dep't of Justice*, No. CV 15-182 (JEB), 2015 WL 4938679, at *1 (D.D.C. Aug. 19, 2015) (same). The well-known Wright and Miller *Federal Practice and Procedure* treatise elaborates on dismissals on this basis as follows:

> A lengthy period of inactivity by the plaintiff may be enough to justify a dismissal for failure to prosecute under Rule 4[1](b) in the circumstances of a particular case, and a significant number of federal courts have so concluded. This is particularly true if the plaintiff seems culpable in some significant respect. This might be suggested by the fact that he or she previously had been warned by the court that he or she must act with greater diligence, has failed to obey the mandates of the Federal Rules or the local rules of the court in which the action is pending or the terms of the district judge's orders in the case, has presented no legitimate excuse for the delay, or if there are other factors aggravating the offending party's inaction, particularly when it has resulted in prejudice to the defendant.

9 Wright & A. Miller, Federal Practice and Procedure, § 2370 (3d ed.) (footnotes omitted).

"Because disposition of claims on the merits is favored, however, the harsh sanction of dismissal for failure to prosecute is ordinarily limited to cases involving egregious conduct by particularly dilatory plaintiffs, after 'less dire alternatives' have been tried without success." *Noble v. U.S. Postal Serv.*, 71 F. App'x 69, 69 (D.C. Cir. 2003) (remanding case for further proceedings because there was "no indication the court pursued other alternatives before resorting to the

sanction of dismissal, and the court provided no notice to the pro se plaintiff that it was considering this course"). Dismissal may be supported by "evidence in the record of 'bad faith, deliberate misconduct, or tactical delay,'" *Gardner v. United States*, 211 F.3d 1305, 1309 (D.C. Cir. 2000) (quoting *Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 188 (D.C. Cir. 1985)), and by evidence of prejudice to defendants caused by plaintiff's failure to diligently pursue his or her lawsuit, *Cherry v. Brown-Frazier-Whitney*, 548 F.2d 965, 969–70 (D.C. Cir. 1976) (affirming dismissal for want of prosecution where the "the case had lain dormant for nearly seventeen months after it became ripe for trial," and "there was positive indication that the delay had operated prejudicially" upon defendants). Unless otherwise specified by the Court, a dismissal for want of prosecution under Rule 41(b) is an adjudication on the merits, and therefore with prejudice. Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."); *see also* 9 Wright et al., *supra*, § 2373 ("because an involuntary dismissal is an adjudication on the merits, it is, in the phrase commonly used by the federal courts, 'with prejudice.'").

Where the aforementioned criteria are satisfied in connection with a plaintiff's failure to pursue arbitration, numerous federal courts have held that dismissal for want of prosecution is appropriate. *See Ames v. Standard Oil Co. (Indiana)*, 108 F.R.D. 299, 303 (D.D.C. 1985) ("If in light of this record, plaintiffs still hoped they could somehow delay and thereby avoid arbitration, one cannot help but read in this record an assurance that hope springs eternal. Litigation, however, should enjoy a significantly shorter lifespan."); *Salt Lick Bancorp v. F.D.I.C.*, 187 F. App'x 428, 447 (6th Cir. 2006) (affirming dismissal for failure to arbitrate); *Krinsk v. SunTrust Bank*, No. 8:09-CV-00909-T-27MA, 2014 WL 202032, at *4 (M.D. Fla. Jan. 17, 2014) (noting that "[o]ther courts

9

have likewise dismissed cases with prejudice for lack of prosecution where the plaintiffs failed to timely initiate arbitration as ordered").

## III. DISCUSSION

The record in this matter speaks for itself. It has now been nearly three years since the Court initially ordered Plaintiffs to proceed to arbitration on the threshold issue of arbitrability. In that period, Plaintiffs have failed to initiate an arbitration proceeding in accordance with the rules of the AAA, let alone pursue arbitration with diligence. The Court may have earlier entertained the notion that Plaintiffs' delays stemmed from issues with perfecting their filings before the AAA, or from the type of general delays that impact any modern adversarial action, but it has become plain that Plaintiffs have no intention of diligently pursuing arbitration. Plaintiffs' counsel has consistently shown an unwillingness to communicate with the AAA on the most simple of issues that would permit his clients' arbitration demands to be adjudicated. Plaintiffs' counsel has now definitively represented that Plaintiffs simply will not pursue arbitration, and that they wait for the Court to dismiss this case for want of prosecution so that they may pursue an appeal. From all this, the Court is compelled to conclude that Plaintiffs have deliberately avoided arbitration as a strategic decision to either have this Court reverse its prior ruling compelling arbitration, or to so stymie the proceedings in this case that the Court has no choice but to order dismissal. In this latter regard, they have succeeded. Plaintiffs' have engaged in dilatory conduct; have repeatedly failed to comply with the Orders of this Court; and have now made no secret of their strategic choice to delay arbitration so that they may pursue an appeal. This is not a case of a single instance of misconduct, but rather an example of a concerted effort to challenge an Order of the Court through intransigence. Although the Court recognizes that dismissal for want of prosecution is an extraordinary remedy, the specific factual circumstances of this case warrant that remedy. At this

juncture, there are simply no other "less dire alternatives" that have not already been attempted by the Court. *Noble*, 71 F. App'x at 69.

In their earlier opposition, Plaintiffs challenged dismissal on essentially two bases. The first was that they disagreed with the Court's Orders requiring them to pursue arbitration on the threshold issue of arbitrability. This argument appears to underlie much of the content of Plaintiffs' most recent brief as well. The Court spoke with finality on this point in its August 2016 Opinion:

> The Court determined that, insofar as Plaintiffs would continue to pursue the claims in this case, it would be necessary for an arbitrator to determine the arbitrability of those claims. . . . Put simply, Plaintiffs' suggestion that they ought not be forced to arbitrate has no place in opposing Defendant's motion to dismiss for failure to prosecute.

Aug. 2016 Op. at 7. In short, the Court has ruled on this issue, and will not revisit it again.

Plaintiffs have also opposed dismissal on the grounds that the arbitral fees they would face are, allegedly, exceedingly high. The Court first addressed the issue of arbitral fees in its January 2015 Memorandum Opinion. *See* Jan. 15, 2015 Mem. Op., ECF No. 64 ("Jan. 2015 Op."), at 19. There, the Court assessed the validity of the delegation clause in the parties' arbitration agreement under the state law of North Carolina, as the parties agreed that the law of North Carolina applied. *Id*. at 9 n.6 ("The parties do not contest the applicability of North Carolina law."). Indeed, the issue of arbitral fees only arose in the context of Plaintiffs' contentions regarding substantive unconscionability under North Carolina law. *See id.* at 19 ("Plaintiffs only point to one feature of the delegation agreement that is substantively unconscionable: the shifting of attorneys' fees and expenses from Defendants to Plaintiffs."); Pls.' Supp. Mem., ECF No. 42-1 (relying on North Carolina state law to assert that "the arbitration agreement is both procedurally and substantively unconscionable"); Pls.' Opp'n Mem. to Second Renewed Mot., ECF No. 26 (same). As the North Carolina Court of Appeals had recently determined that "high arbitration costs . . . could no longer

11

be a basis for substantive unconscionability," the Court concluded that Plaintiffs' fee-based challenge did not render the delegation clause unconscionable under North Caroline law. Jan. 2015 Op. at 20 (citing *Torrence v. Nationwide Budget Finance*, 753 S.E.2d 802, 811 (N.C. App. 2014)). The Court reaffirmed that decision in an August 2015 Memorandum Opinion denying Plaintiffs' Motion for Reconsideration or in the Alternative for Certification of Interlocutory Appeal.

Although Plaintiffs challenged the delegation clause under North Carolina State law, before deciding to dismiss this case the Court has considered—and requested briefing on—federal case law on arbitral fees. In particular, the Court is mindful that the Supreme Court of the United States in *Green Tree Fin. Corp.-Alabama v. Randolph* held that it "may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000).

The parties dispute whether the "effective vindication doctrine" set forth in *Green Tree* is still viable and applicable in this case, but the Court need not resolve that dispute. Even assuming that the doctrine applies, Plaintiffs have not carried their burden of showing that it excuses their refusal to arbitrate under the particular facts of this case. The Supreme Court in *Green Tree* expressly held that "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, *that party bears the burden of showing the likelihood of incurring such costs*." *Green Tree*, 531 U.S. at 92 (emphasis added); *see also Dowley v. Dewey Ballantine, LLP*, No. CIV.A. 05-622(EGS), 2006 WL 1102768, at *7 (D.D.C. Apr. 26, 2006) ("the plaintiff bears the burden of showing the likelihood of incurring burdensome

expenses that would prohibit him from vindicating his statutory claims in an arbitral forum" (citing *Green Tree*, 531 U.S. at 92)).

Plaintiffs have definitively *not* satisfied this burden, despite being given a number of opportunities to do so. Plaintiffs have never demonstrated that, were they to pursue arbitration on the threshold issue of arbitrability, they would face prohibitive arbitration fees and costs. Plaintiffs have recently submitted a declaration from their counsel which attempts to establish that the arbitration fees in this case would be prohibitively high, and that Plaintiffs would not be eligible for any relief from those fees. But, upon careful review, that declaration actually establishes that Plaintiffs' counsel has not taken the necessary—and simple—steps to determine the *actual* fees AAA would require, and has not *actually* inquired with the AAA about obtaining any sort of financial relief for his clients. The Court cannot excuse Plaintiffs of the obligation to arbitrate on the basis of excessive costs when Plaintiffs refuse to take these actions. Plaintiffs' counsel makes bald statements such as "there is simply no scenario I could discern that would make the arbitration process anything but impossible for Plaintiffs to afford," that "it was [his] determination" that his clients would not qualify for financial relief from AAA, and that he "believed it would be futile to apply" for such relief. *See* Decl. of Scott J. Bloch, ECF No. 90-5, at ¶¶ 9-11. It is difficult to understand why counsel would make such assumptions if Plaintiffs' financial conditions are as dire as he has suggested in other filings, including Plaintiffs' declarations. Regardless, Plaintiffs' counsel's speculative statements and assumptions are plainly insufficient to satisfy Plaintiffs' burden, and Plaintiffs have not submitted any competent, credible evidence supporting them.

Plaintiffs themselves have also submitted their own declarations, but these are similarly insufficient. In summary form, the declarations of the Plaintiffs each contain a statement of their monthly income, a statement from each that they have been informed by their counsel that the fees

13

for arbitration would be between $3,000 and $7,000, and assertions from each that they "cannot afford" those fees. Not only are these declarations premised on assumptions about the costs of arbitration that Plaintiffs were provided by their counsel—which, as discussed above, are unsubstantiated and not credible—their vague attestations about their monthly income and costs are insufficient to demonstrate the sort of prohibitive financial situation that could justify their refusal to prosecute this case.

In short, at no time during the lengthy delay since the Court ordered Plaintiffs to arbitrate have Plaintiffs submitted sufficient evidence to establish that they should be relieved of the obligation to do so on the grounds of excessive cost. Even if the record hints that arbitration could be costly, the costs to Plaintiffs are highly speculative. They are speculative not only because the arbitration agreements calls for the arbitrator to allocate fees between the parties—a fact Plaintiffs largely attempt to ignore in their papers—but also because Plaintiffs have refused to take the necessary—and completely feasible—steps to discover the actual total fee for arbitration. Under such circumstances, the Court simply cannot allow Plaintiffs to use the specter of potential costs to avoid Court-ordered arbitration.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Plaintiffs have presented no adequate excuse for failing to comply with this Court's order that they proceed to arbitration. They have failed to prosecute their case and failed to comply with Court Orders. Accordingly, the Court will **GRANT** Defendants' Motion to Reinstate and Motion to Dismiss. This matter is **DISMISSED WITH PREJUDICE**. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge